UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
FEB 2 4 2026
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Binghamton

3:26-CV-294
(MAD/PJE)

Sakinah Jef'ree Collins,

**Plaintiff**,

v.

CONDUENT, INC.

**Defendant**.

Case No.: _____

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### (Title VII and ADA)

Plaintiff demands a trial by: ☒ JURY ☐ COURT

### JURISDICTION

1. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 2000e-5, 42 U.S.C 12117

### PARTIES

2. **Plaintiff**: Sakinah Jef'ree Collins

   Washington Avenue Unit 7297

   Endicott, New York 13760

3. **Defendant**: CONDUENT, INC.

   Huron Campus 1800 Clark Street

1

Endicott, New York 13760

4. This action is brought pursuant to:

☒        Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et

seq., for employment discrimination based on religion and retaliation,

☒        Americans with Disabilities Act (ADA), as amended, codified at 42 U.S.C. § 12101 et

seq., for employment discrimination based on disability, failure to accommodate, and

retaliation.

5. Venue is invoked pursuant to 28 U.S.C. § 1391.

6. Defendant's conduct is discriminatory with respect to the following:

☒ My Disability

☒ My Religion

☒ Retaliation for requesting accommodations and complaining about discrimination

7. The conduct complained of in this action involves:

☒ Termination of employment

☒ Failure to accommodate my disability

☒ Unequal terms and conditions of employment

☒ Retaliation

☒ Hostile work environment/Harassment

2

## FACTS

- I was hired by Paper Alternative Solutions ("PAS"), a staffing agency, on or about August 16, 2024, and placed on assignment at Defendant Conduent, Inc. as a Data Entry Specialist in the EZPass Image Review department at the Huron Campus in Endicott, New York.

- Although PAS was my employer of record for payroll purposes, Defendant Conduent, Inc. controlled my daily work, including supervision, schedules, attendance rules, discipline, and ultimately the decision to terminate my employment.

- On my first day of work, after the badge incident and my initial termination that was later reversed, PAS HR representative Ebony Green was present and witnessed me advocating for myself. Shortly after, she told me that she and PAS Program Manager Jason Krise had disagreements, and she said "we have to stick together" and that she would provide me with a corporate contact number to escalate concerns. She did not provide that number.

- I am a qualified individual with disabilities, including ADHD, fibromyalgia, degenerative joint disease in my knee, degenerative disc disease of the lumbar spine, vision impairment, and other chronic conditions. These conditions cause chronic pain, limited mobility, stiffness, fatigue, and difficulty concentrating, especially in noisy, cold, or high-traffic environments. I receive SSD and was under ongoing medical care during my employment.

- During my employment, I requested reasonable accommodations related to these disabilities. From around October through December 2024, I asked to be moved from a high-traffic, noisy seat near the bathroom with strong odor and slamming door to a quieter location, and I complained about extremely cold temperatures that aggravated my

pain. I also requested a religious accommodation so I would not be required to work on my Sabbath.

- I made these requests verbally and in writing to Conduent Team Lead "Sam," Conduent supervisors Nikki Smith and Jake Grant, and to PAS HR representative Ebony Green. I explained that the location and cold impacted my ability to concentrate and manage my medical conditions. Despite this, my seat was never changed, the cold conditions were never truly addressed, and my religious accommodation was not granted.

- To manage my pain and symptoms at work, I purchased and used several comfort and ergonomic items at my workstation, including an adjustable under-desk footrest, wrist-support keyboard and mouse pads, blankets, heating pads, and a handheld magnifier for license plate images. These items were visible to Conduent supervisors and showed the impact of my conditions.

- On October 15, 2024, PAS Program Manager Jason Krise issued a written "Call Out Process" memo to all PAS employees stating that employees must (1) notify Conduent leadership (Nikki or Jake) about tardies or call-offs, and (2) notify PAS Human Resources by phone when calling out or leaving early so PAS could help monitor occurrence levels. This showed that Defendant Conduent, Inc. was in charge of the attendance rules and decisions, and PAS mainly handled communication and paperwork between employees and Conduent.

- Throughout my assignment, I tried to follow this process. For example, in December 2024 when I was late due to snow, I emailed Jason explaining the conditions. He responded that he would check with Conduent to see if any points were issued and later

4

confirmed that no points were issued for that tardy. I relied on this information to monitor my attendance.

- On December 9, 2024, I asked Jason how many attendance points I had. He told me I had 2 points. I was never warned that I was near termination or told that I had 7.5 points before December 31, 2024.

- In mid-December 2024, I asked Jason for the contact information of his supervisor or a corporate representative so I could document concerns. He replied that he reports directly to the president and instructed me to bring my concerns to PAS HR (Ebony). I told him I preferred to share my concerns with someone other than him to ensure they were properly documented. This shows I tried to escalate concerns about my treatment through appropriate channels.

- On December 31, 2024, I arrived at work in significant mental and emotional distress related to my disabilities and the ongoing workplace issues. That morning, I attempted to go to the PAS HR office in person but found it dark and locked. At approximately 8:45 a.m., I emailed PAS HR (Ebony Green) with the subject "Immediate Leave Due to Personal Well-Being," explaining that I was not in the right mental space to continue working and needed to leave to protect my well-being.

- On December 31, 2024, when I emailed Ebony explaining that I was not mentally able to continue working that day, she did not respond to my email. A co-worker later reached out asking me to contact Ebony. In early January 2025, I spoke with Ebony and she indicated she believed my termination was incorrect. She asked me to send her a copy of Conduent's attendance policy but requested that I not mention in the email that she had asked for it. She also mentioned a possible alternative position in a warmer area. I sent

5

the requested email with the policy screenshot on January 8, 2025, but I never received a response about the position or any update on my employment status.

- Later that same day, at approximately 1:41 p.m., I sent a detailed email to PAS HR, cc'ing Jason, titled "Formal Documentation of Workplace Concerns." In this email, I documented the first-day badge incident where my employment was initially terminated and then reversed, my feelings of isolation and scrutiny, denial of my seating request, and my belief that I was being singled out. I requested an investigation and a fair review. This was a formal, written complaint about discrimination and unfair treatment.

- Shortly after this protected complaint, Jason emailed me stating that I allegedly had 7.5 attendance points because my leaving early on December 31, 2024, was classified as a No Call No Show (NCNS) with double points due to the holiday week. I responded that I had already emailed PAS HR explaining why I needed to leave and asked Jason to clarify how I had accrued 7.5 points. He then sent me an attendance breakdown and stated that, per Conduent's directions, PAS had to release me from my position.

- At approximately 3:18 p.m. on December 31, 2024, Jason sent a "Notice of Release" email stating that, per Conduent's direction and its attendance policy, I was being released because my points were "accurate at 7.5." He stated that a member of Conduent management must be notified before leaving and that PAS had to abide by Conduent's decision. My badge was deactivated, my personal items were collected, and my assignment with Conduent ended that day.

- Conduent's own EZPass attendance policy states that employees who are unable to notify management at the time of an illness or emergency may notify them when physically able. On December 31, 2024, I followed PAS's process by emailing PAS HR when I was

6

able and documenting my mental health distress, yet my absence was still treated as NCNS and used to double my points and terminate me. This was inconsistent with Conduent's policy and unfairly harsh.

- After my termination, I continued to advocate for myself. On January 8, 2025, I emailed PAS HR attaching a screenshot of Conduent's attendance policy and explaining that my December 31 absence was misclassified. On January 9, 2025, Jason informed me that my termination was under review and that PAS and Conduent were considering reversal. On January 31, 2025, he said a meeting with Conduent leadership had occurred but no final decision would be communicated to me. My employment has never been reinstated.

- Throughout my employment, Defendant Conduent, Inc. was aware of my disability-related limitations and my need for a quieter, warmer environment through my repeated accommodation requests and my visible use of blankets, heating pads, ergonomic supports, and a magnifier at my workstation. Despite this knowledge, Conduent denied or ignored my accommodations, subjected me to increased monitoring and social isolation after I complained, and ultimately terminated me under an inconsistent and unfair application of its attendance policy.

- Defendant Conduent, Inc. discriminated against me because of my disabilities, failed to reasonably accommodate me, retaliated against me for requesting accommodations and documenting workplace concerns, and subjected me to a hostile work environment, in violation of the ADA and Title VII. The timing of my termination—hours after my formal written complaint on December 31, 2024, and shortly after months of accommodation requests—shows that the attendance reason was a pretext for discrimination and retaliation.

7

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Disability Discrimination (ADA) – Against Defendant Conduent, Inc.**

1. Plaintiff repeats and realleges paragraphs 1 through all factual allegations above as if fully set forth herein.

2. Defendant Conduent, Inc. is an employer within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111, employing more than 15 employees and engaged in interstate commerce.

3. Plaintiff is a qualified individual with disabilities under the ADA. Plaintiff's ADHD, fibromyalgia, degenerative joint disease, degenerative disc disease, vision impairment, and related conditions substantially limit major life activities including concentrating, thinking, working, walking, sitting, and managing pain.

4. Plaintiff was qualified to perform the essential functions of the Data Entry Specialist position with or without reasonable accommodation.

5. Defendant Conduent, Inc. discriminated against Plaintiff because of her disabilities by subjecting her to adverse employment actions including unequal working conditions, denial of reasonable accommodations, and termination of employment.

6. Defendant's conduct was intentional and in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

## SECOND CAUSE OF ACTION

**Failure to Accommodate (ADA) – Against Defendant Conduent, Inc.**

1. Plaintiff repeats and realleges the preceding paragraphs.

2. Plaintiff requested reasonable accommodations for her disabilities, including:

a. A seating change to a quieter location to accommodate ADHD-related concentration difficulties;

b. Relief from extreme cold temperatures that aggravated fibromyalgia and joint pain;

c. Religious scheduling adjustments so she would not be required to work on her Sabbath.

3. Defendant Conduent, Inc. was aware of Plaintiff's disabilities and accommodation needs through her verbal and written requests, her visible use of assistive devices and ergonomic equipment, and her communications to Conduent supervisors and HR.

4. This included Plaintiff's reports to PAS HR representative Ebony Green about the extreme cold, her need for gloves, and her request for a religious accommodation, which were not meaningfully addressed.

5. The requested accommodations were reasonable and would not have caused undue hardship to Defendant.

6. Defendant Conduent, Inc. refused to provide reasonable accommodations, delayed action indefinitely, dismissed Plaintiff's concerns, or ignored them entirely.

7. Defendant's failure to accommodate was intentional and in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

## THIRD CAUSE OF ACTION

**Retaliation (ADA and Title VII) – Against Defendant Conduent, Inc.**

9

1. Plaintiff repeats and realleges the preceding paragraphs.

2. Plaintiff engaged in protected activity by:

a. Requesting disability accommodations from approximately September through December 2024;

b. Complaining about discriminatory working conditions and denied accommodations to Conduent supervisors;

c. Sending a formal written documentation of workplace concerns on December 31, 2024;

d. Continuing to advocate for correction of her attendance classification after termination;

e. Reporting her mental distress and need to leave work on December 31, 2024 to HR by email.

3. Defendant Conduent, Inc. knew of Plaintiff's protected activity.

4. After Plaintiff engaged in protected activity, Defendant subjected her to materially adverse actions including:

a. Increased monitoring and social isolation;

b. Continued denial of accommodations;

c. Mischaracterization of Plaintiff's December 31, 2024 absence as NCNS despite her written notice of mental distress;

d. Termination on December 31, 2024, within hours of her formal written complaint.

5. There is a causal connection between Plaintiff's protected activity and the adverse employment actions. The close timing, pattern of treatment, and inconsistent application of the attendance policy establish that Plaintiff's termination was retaliatory.

10

6. Defendant's conduct was intentional and in violation of Title VII, 42 U.S.C. § 2000e et seq., and the ADA, 42 U.S.C. § 12101 et seq.

## FOURTH CAUSE OF ACTION

**Religious Discrimination (Title VII) – Against Defendant Conduent, Inc.**

1. Plaintiff repeats and realleges the preceding paragraphs.

2. Plaintiff requested a religious accommodation for Sabbath observance so she would not be required to work on Saturdays.

3. Defendant Conduent, Inc. failed to reasonably accommodate Plaintiff's sincerely held religious beliefs and failed to engage in any meaningful interactive process regarding religious accommodation.

4. Providing religious accommodation would not have imposed an undue hardship on Defendant.

5. Defendant discriminated against Plaintiff based on her religion in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

## FIFTH CAUSE OF ACTION

**Hostile Work Environment (Title VII and ADA) – Against Defendant Conduent, Inc.**

1. Plaintiff repeats and realleges the preceding paragraphs.

2. Plaintiff was subjected to a hostile work environment based on her disability and in retaliation for her protected activity, including:

a. Dismissive and condescending responses to accommodation requests;

b. Increased monitoring and surveillance after requesting accommodations;

c. Social isolation and exclusion from workplace interactions;

d. Being singled out for discipline (e.g., tapestry and seating issues) while others were not similarly disciplined;

e. Confusing and contradictory instructions regarding policies and procedures;

f. Threats of termination and actual termination shortly after formal complaints;

g. Inconsistent and non-follow-through responses from HR after she reported cold conditions, religious needs, and mental distress.

3. The harassment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive and intimidating work environment.

4. Defendant Conduent, Inc. knew or should have known of the hostile work environment and failed to take prompt and effective remedial action.

5. Defendant's conduct was intentional and in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and the ADA, 42 U.S.C. § 12101 et seq.

## ADMINISTRATIVE EXHAUSTION

1. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the alleged discriminatory acts by Defendant Conduent, Inc. arising from her employment and termination on December 31, 2024. The charge was assigned EEOC Charge No. 525-2025-03055.

2. The EEOC issued a Notice of Right to Sue to Plaintiff dated July 31, 2025, with respect to Charge No. 525-2025-03055. Plaintiff received this Notice and files this action within 90 days of receipt. A copy of the Notice of Right to Sue is attached as Exhibit A.

3. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

4. Defendant Conduent, Inc. is an employer within the meaning of 42 U.S.C. § 2000e(b) and 42 U.S.C. § 12111, employing more than 15 employees.

5. Defendant Conduent, Inc. is engaged in commerce within the meaning of 42 U.S.C. § 2000e(g) and 42 U.S.C. § 12111.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1. Back pay and lost benefits from the date of Plaintiff's termination on December 31, 2024, until the date of judgment, in an amount to be determined at trial.

2. Front pay in lieu of reinstatement, or reinstatement to Plaintiff's former position (or a comparable position) with full seniority, benefits, and all other rights and privileges of employment.

3. Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in an amount to be determined at trial.

4. Punitive damages to punish and deter Defendant Conduent, Inc. from engaging in further unlawful discrimination, retaliation, and harassment, in an amount to be determined at trial.

5. Injunctive relief requiring Defendant to cease and desist from discriminatory and retaliatory practices, and to adopt appropriate anti-discrimination policies, training, and procedures.

6. Pre-judgment and post-judgment interest on all monetary awards as allowed by law.

7. Reasonable attorneys' fees and costs, including litigation expenses, as allowed by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 12117, and any other applicable law.

8. Any other legal or equitable relief the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: __1/20/2026__

_Sakinah Jefree Collins_

Sakinah Jefree Collins

200 Washington Avenue Unit 7297

Endicott, New York 13760

272-447-1669

collinssjfree@gmail.com

14

Exhibit A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Buffalo Local Office**
300 Pearl St, Suite 450
Buffalo, NY 14202
(716) 431-5007
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/20/2025

**To:** Sakinah Jefree Collins
200 Washington Avenue Unit 7297
Endicott, NY 13760
Charge No: 525-2025-03055

EEOC Representative and email:    Julie George
Senior Investigator
julie.george@eeoc.gov

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 525-2025-03055.

On behalf of the Commission,

**Maureen C. Kielt** Digitally signed by Maureen C. Kielt
Date: 2025.11.20 09:16:08 -05'00'

Maureen Kielt
Local Office Director

**Cc:**

Tammy Witt
Conduent
780 Shiloh Road
Plano, TX 75074


**Please retain this Notice for your records.**

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 525-2025-03055 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 525-2025-03055 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

✓ **Only one** major life activity need be substantially limited.

✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

are **not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.